UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| LISA D. LEFEBVRE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 1:18-cv-274-PPS |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Lisa Lefebvre applied for Social Security Disability Benefits, but her application was denied at all stages of the administrative process. In this appeal of those decisions Lefebvre raises four distinct arguments which she says requires reversal. The first is a procedural argument. She says that the Appeals Council was wrong to not consider the additional evidence she submitted with her administrative appeal. The remaining three arguments are more traditional and familiar arguments to those well-versed in Social Security disability cases, but I need not address them. This is because I agree with Lefebvre that the Appeals Council failed to even consider what I see as new and material evidence submitted in the appeal. A remand is therefore required.

**Background**

Lisa Lefebvre applied for benefits on April 26, 2015, claiming that she was

disabled as of October 20, 2014. [A.R.[1] 11.] Her claim was denied initially and denied again upon reconsideration. After that, she requested and had a hearing before an Administrative Law Judge on May 10, 2017. On August 11, 2017, the ALJ issued a written decision denying Lefebvre benefits. She then took her case to the Social Security Appeals Council, submitted additional evidence in support of her claim, but achieved no better result. On July 16, 2018, the Appeals Council denied Lefebvre's request for review, meaning that the ALJ's written decision was the final decision as to her case. [*Id.* at 1.] She now seeks review of that decision.

The ALJ's written decision follows the familiar format. The ALJ began noting the claimed date of the onset of Lefebvre's disability and her last date of insured status. [A.R. 13.] He continued, finding that Lefebvre had the following severe impairments: osteoarthritis of the right knee, status post replacement and residual tendinitis, mild left knee osteoarthritis, diagnosis of bilateral radial tunnel syndrome, right calcaneal spur and plantar fasciitis, headaches/migraine/cervicalgia, and obesity. [A.R. 14.] Then he reviewed those impairments and found that on their own, or taken together, they did not meet or medically equal any applicable Social Cecurity Listing to find Lefebvre presumptively disabled. [A.R. 14-17.]

The ALJ next determined Lefebvre's Residual Functional Capacity ("RFC") which attempts to articulate what a claimant is capable of doing notwithstanding her disabilities. To do so, the ALJ evaluated the evidence presented by Lefebvre, both the

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry #4. Citations throughout are to the page number in the bottom right hand corner of the A.R.

objective medical records and the relevant opinion evidence. The ALJ's RFC determination was lengthy, specific, and as follows:

> [Lefebvre can] perform a range of sedentary work as defined in 20 CFR 404.1567(a) in that the claimant is limited to lifting, carrying, pushing and pulling ten pounds frequently and occasionally. The claimant can sit for at least six hours in an eight-hour workday and stand and/or walk two hours in an eight-hour workday. The claimant should not climb ropes, ladders, or scaffolds. The claimant should not kneel, crouch, and crawl. The claimant can occasionally balance. The claimant can occasionally bend and stoop in addition to what is required to sit. The claimant can occasionally use ramps and stairs, one to two flights with rails. Aside from use of ramps and stairs on an occasional basis, the claimant should not work upon uneven surfaces. The claimant should avoid working upon wet and slippery surfaces. The claimant should avoid work within close proximity to open and exposed heights and open and dangerous machinery, such as open flames and fast moving exposed blades. The claimant should avoid work involving concentrated exposure to vibration such as using heavy sanders. The claimant should avoid work within close proximity to very loud noises (level 5), such as a fire alarm, or very bright flashing lights, such as a strobe, more than occasionally. The claimant requires use of a cane for prolonged ambulation and when upon uneven surfaces although should avoid surfaces as noted above. The claimant is limited to frequent, not constant, fingering, feeling, gripping, and fine manipulation of small objects, such as a pen, computer mouse, or paper clip. The claimant is limited to frequent, not constant, gross manipulation and handling, grasping, turning, and gripping of larger objects. The claimant should not perform overhead work or overhead reaching. Largely due to migraines and any remaining residual depression or anxiety, the claimant is limited to work within a low stress job defined as requiring only occasional decision-making and only occasional changes in the work setting. The claimant can tolerate predictable changes in the work environment. The claimant can meet production requirement sin an environment that allows her to sustain a flexible and goal-oriented pace. The claimant is limited from fast-paced work, such as assembly line production work with rigid or strict productivity requirements. Due to any residual depression and migraines, the claimant is limited to work that involves only simple, routine, and repetitive tasks that can be learned through short demonstration and up to 30 days. The

> claimant can maintain the concentration required to perform simple tasks. The claimant can remember simple work-like procedures. The claimant can make simple work-related decisions. The claimant can maintain the concentration and attention as well as the persistence to perform such duties on a day-in and day-out basis, for eight hours per day, five days per week, or within some other form of full time competitive work environment.

[A.R. 18.] It's evident the ALJ put in considerable work to form this RFC, focusing on a variety of different functions and the extent to which Lefebvre could perform them. The ALJ then laid out the reasoning behind this RFC in nine pages of discussion of Lefebvre's medical history and conditions. [A.R. 18-27.] I won't repeat the full analysis here, but the takeaway for our purposes is that the RFC was arrived at because the ALJ found Lefebvre's claimed level of disability was not fully consistent with the record and he did not think the evidence fully supported the level of impairment that Lefebvre claimed.

The ALJ relied heavily on a perceived inconsistency in Lefebvre's testimony related to whether she needed a left knee replacement surgery. The ALJ commented that "no such recommendation related to left knee replacement is reflected in orthopedic records." [A.R. 20.] Indeed, the lack of written evidence concerning the need for any left knee replacement surgery was brought up by the ALJ multiple times as evidence which the ALJ relied upon in undermining Lefebvre's hearing testimony. [*E.g.*, A.R. 22, 27.] The ALJ also discussed other discrepancies between Lefebvre's testimony and claimed level of impairment and the underlying medical evidence, all of which undoubtedly had an impact on the RFC determination, but are not relevant to the decision here and so will not be chronicled. [*See generally* A.R. 18-27.]

With the RFC settled, the ALJ proceeded to the next step and determined whether Lefebvre could perform past work. The ALJ found that Lefebvre could not perform her previous jobs as a cook (defined as "medium work") or fast food manager ("light work") because Lefebvre was limited to sedentary work. [A.R. 27-28.] Then, the ALJ posed to a vocational expert whether a person with Lefebvre's hypothetical RFC would be able to find sustainable work. The VE testified that with the limitations contained within the RFC, such an individual would be able to perform the following representative jobs: food order clerk, polishing machine operator, and sorting machine operator. [A.R. 28.] As such, the ALJ determined that Lefebvre was not disabled.

Normally in these cases, the facts necessary to decide the appeal are limited to the written decision of the ALJ, but here a description of the Appeals Council's decision is necessary given the nature of Lefebvre's challenge. In its decision, the Appeals Council focused on Lefebvre's submission of additional evidence in support of her application which was either not submitted with the original application or did not exist at the time the ALJ issued his written decision. Thus, it was not considered by the ALJ when he made his decision on Lefebvre's application. This evidence consisted of medical records from a hospital, a physical therapy provider, and one of Lefebvre's doctors. All of it related to the condition of her knees. As discussed further below, the Appeals Council determined that this information fell into two categories—evidence that pre-dated the ALJ's decision and evidence that post-dated it. The Appeals Council determined that neither category of evidence could result in a different outcome. The Appeals Council thus denied the request for review.

## Discussion

In Social Security Disability Benefits cases, I sit as a reviewing court, and accordingly I have a limited role to play. My task is not to review Lefebvre's application in full to determine whether in my opinion she meets the legal definition of disabled. Instead, I review the written decision of the ALJ to determine whether the factual determinations are supported by substantial evidence and whether the ALJ applied the correct legal standards to those facts. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). And "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

In this appeal, however, my review is less focused on the ALJ's written decision because Lefebvre's first (and meritorious) argument is not so much that the ALJ committed an error, but that the Appeals Council, which is the first line of "appellate" review of an ALJ's decision on benefits, made an error in how it assessed Lefebvre's claim for disability. Normally, the Appeals Council's decision not to review a claimant's

claim is a discretionary function and is unreviewable by a federal court. *Getch v. Astrue*, 539 F.3d 473, 483–84 (7th Cir. 2008). But there are exceptions, and one of those is when a claimant offers new evidence that was not before the ALJ when they issued their written decision. *See* 20 C.F.R. §§ 404.970(a)(5) and 416.1470(b). In that instance, the applicable regulations require the Appeals Council to engage in specific analysis as to whether the evidence is material and "new" and whether it relates to the claimants' conditions at the time they applied for benefits. *Id.* If the evidence was something the Appeals Council was required to review and didn't, that could be legal error and a basis to reverse. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997) ("Review is possible only if . . . held, the Appeals Council's action rests on a mistake of law, such as a determination that the evidence submitted for the first time to the Appeals Council was not "new" or "material" within the meaning of the governing rules.") (citation omitted); *Getch*, 539 F.3d at 483-84 ("absent legal error, however, the Council's decision whether to review is 'discretionary and unreviewable'") (citation omitted). That's what happened here.

As noted above, the Appeals Council divided the new evidence Lefebvre submitted into two categories and analyzed them separately. Because these two paragraphs, and in reality only the latter, are at the heart of my decision, they are worth stating in full:

> You submitted medical records from Luther Hospital dated September 1, 2015 through July 11, 2017 (12 pages), a letter from Steppin' Up Physical Therapy dated September 8, 2017 (2 pages), and medical records from Fort Wayne Orthopedics dated December 10, 2015 through July 20, 2017 (8 pages). We find this evidence does

> not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.
>
> You submitted medical records from Lutheran Hospital dated October 18, 2017 through October 30, 2017 (29 pages) and a letter from George T. Kolettis, M.D. dated September 11, 2017 (2 pages). The Administrative Law Judge decided your case through August 11, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 11, 2017.

[A.R. 2.] As is clear from this, the Appeals Council divided the new evidence generally on temporal lines: (1) evidence predating the ALJ's written decision and (2) evidence postdating the ALJ's written decision. It treated the two categories differently as well. The first was reviewed for its substance and determined not to have had a reasonable probability of changing the outcome of Lefebvre's case, and the second was deemed irrelevant because it did "not relate to the period at issue." [*Id.*] For starters, the decision does not say *why* it does not relate to the period at issue. What's more, it is plain that the evidence post-dating the ALJ's decision was not substantively reviewed by the Appeals Council. In other words, it was ignored based on the timing of the evidence alone. And therein lies the error. *Newbury v. Astrue*, 321 Fed. Appx. 16, 18 n.2 (2nd Cir. 2016) ("[M]edical evidence generated after an ALJ's decision cannot [be] deemed irrelevant solely because of timing.") (citation omitted).

This case is similar to another relatively recent decision out of the Northern District of Indiana. In *Anderson v. Berryhill*, No. 1:17-cv-183-SLC, 2018 WL 3471160 (N.D. Ind. Jul. 18, 2018), the ALJ's decision was reversed and the case was remanded on the very same issue that Lefebvre is asking for here. Given the similarities between the

-8-

cases and because I think the decision here must be remanded on similar grounds, a summary of *Anderson* is in order.

The claimant in *Anderson* alleged disability based on a variety of impairments, including "swelling in her legs and feet, shortness of breath, high blood sugar, lightheadedness, pain in her legs, diabetes, high cholesterol, thyroid problems, asthma, and back pain." 2018 WL 3471160, at *1. The ALJ denied her benefits and the Appeals Council denied her request for review even though she submitted additional evidence. *Id.* That new evidence included an MRI of her lumbar spine and records from an Orthopedic center. *Id.* at *3. This evidence tended to show the claimant's back problems and back pain were greater than the non-severe impairment by the ALJ. *Id.* at *4.

The court ruled the Appeals Council's review (or lack thereof) was deficient when it rejected otherwise material evidence on the grounds that it was "new information is about a later time" which did "not affect the decision about whether [Lefebvre was] disabled beginning on or before February 16, 2016." *Id.* at *4. It was thus clear that the Appeals Council rejected the evidence, not after considering its substance, but merely because it post-dated the ALJ's written decision. *Id.* ("[t]he Appeals Council's cursory, formulaic rejection of [the MRI and the Ortho Northeast records] simply because [they were] generated after the ALJ's decision, without any legal or factual reasoning, is insufficient.") (quoting *Webster v. Colvin*, 215 F. Supp. 3d 237, 242 (W.D.N.Y. 2016) (alternations in original).

So too here. In the Notice of Appeals Council Action sent to Lefebvre, the medical records from October 2017 and letter from Dr. Kolettis from September 2017

-9-

were summarily rejected solely because they post-dated the ALJ's August 11, 2017 decision. In doing so, all the Appeals Council said was that "[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 11, 2017." [A.R. 2.] Besides a few small tweaks in the language, that's the same boilerplate as in *Anderson*. And like in *Anderson*, it reflects a failure by the Appeals Council to analyze this evidence beyond simply its date and thus requires a remand for further consideration of Lefebvre's claim.

The new evidence is also material because it helps to fill in some of the evidentiary gaps noted in the written decision. The ALJ specifically said that there was "no such recommendation related to left knee replacement is reflected in the orthoepic records and imaging has not reflected pathology that requires such surgery." [A.R. 20.] Elsewhere in the written decision, the ALJ stated that "[t]he claimant testified that she had been advised during this visit that left knee replacement was necessary; however, the pages provided do not suggest any such advice." [A.R. 22.] It's clear then the ALJ did not believe Lefebvre's testimony regarding her left knee and discounted her testimony accordingly. The ALJ further highlighted older evidence in the file which tended to show any impairment of Lefebvre's left knee was non-severe in nature. [*Id.* ("[T]he x-rays taken in October 2015 showed only 'subtle:' and mild changes (Exhibit 16F) that would not appear to suggest the need for such drastic treatment.").]

These conclusions by the ALJ are undercut by Dr. Kolettis's September 11, 2017 letter which describes an extended period of left knee problems (at least a year) and included a recommendation for a knee replacement. [A.R. 100.] And, in fact, Lefebvre

then had left knee replacement surgery in October 2017.

It's impossible to square Dr. Kolettis's letter and Lefebvre's subsequent—but close in time to the ALJ's decision—knee replacement surgery with the ALJ's conclusion that no such left knee replacement surgery was necessary or recommended in Lefebvre's medical records. It wouldn't make sense that in August 2017, Lefebvre's left knee deterioration was "mild" but then was recommended to be replaced the following month and actually replaced the month after that. *See, e.g., Stepp v. Colvin*, 795 F.3d 711, 725-26 (7th Cir. 2015) (finding that treatment notes and an MRI created after the hearing and submitted to the Appeals Council indicated a gradual worsening of the claimant's degenerative disc disease, in contrast to the ALJ's conclusion that the claimant was on an upward trajectory at the end of the adjudicative period). Like in *Anderson*, Lefebvre's condition is a degenerative one, dealing with her left knee while in *Anderson* it was the claimant's back and spine. Both are generally long-term degenerative conditions and its uncontested that Lefebvre's left knee problems existed at the time the ALJ rendered their decision. Dr. Kolettis's letter shows this wasn't a sudden worsening of a condition that only occurred after the ALJ's decision.

I don't fault the ALJ for the conclusion he reached on the issue; this evidence was not in front of him so he couldn't have known about it. But had this evidence been in front of the ALJ, I think there is at least a reasonable probability that he would have reached a different conclusion. And that is the standard governing the materiality of such new evidence. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (holding that materiality is satisfied "beyond question" where ALJ's decision rests in large part on

-11-

missing diagnosis and the new evidence "fills in that evidentiary gap by providing exactly that confirmation").

Nor can this be said to be harmless error. The Commissioner is correct when they say that the RFC determination incorporated limitations based on Lefebvre's knee problems because it limited her to sedentary work. [DE 10 at 10-11.] But I don't think it is enough to affirm the ALJ's decision because Lefebvre testified she sometimes had difficulties remaining seated and would need to elevate her leg at home to help with the pain. [A.R. 110-112.] That undercuts simply limiting her to sedentary work. Likewise, the ALJ discounted Lefebvre's need of a cane to ambulate at all times which could be called into question on account of her left knee problems being more severe than the ALJ adjudged them to be. In sum, given that the lack of corroboration of the need for a knee replacement was remarked upon multiple times by the ALJ as a reason to discount Lefebvre's testimony, this new evidence offered by Lefebvre could have impacted the ALJ's decision. It should be considered on remand.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Lisa Lefebvre's application for Social Security Disability Benefits is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.

SO ORDERED on September 20, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT